IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ALASDAIR S.M. MACDONALD,  Civil No. 06-715-AA
                          OPINION AND ORDER

       Plaintiff,

  vs.

BRANDON C. PEDRO, acting in
his individual capacity;
CHRISTINE OLSON, acting in her
individual capacity; DAVID B.
THOMPSON, acting in his
individual capacity; JOHN
DOES ONE, TWO AND THREE
(presently unidentified
employees of the Multnomah
County Sheriff's Office,
Corrections Division), acting
in their individual capacities,
and MULTNOMAH COUNTY, OREGON,

       Defendants.

---

Harrison Latto
Attorney At Law
400 S.W. 6th Avenue, Suite 600
Portland, Oregon 97204
    Attorney for plaintiff

Page 1 - OPINION AND ORDER

Agnes Sowle
County Attorney for
Multnomah County, Oregon
Stephen Madkour
Assistant County Attorney
501 S.E Hawthorne Blvd., Suite 500
Portland, Oregon 97214
    Attorneys for defendants Christine Olson,
    David B. Thompson and Multnomah County

AIKEN, Judge:

Defendants Olson, Thompson, and Multnomah County (defendants) move for partial summary judgment pursuant to Fed. R. Civ. P. 56. Their motion is denied.

## BACKGROUND

Plaintiff brings this 42 U.S.C. § 1983 action against Multnomah County, and County employees Pedro, Olson, and Thompson.[1] Plaintiff alleges that between May 17, 2004, and June 1, 2004, plaintiff was in custody and housed at the Multnomah County Detention Center (MCDC). Plaintiff asserts several federal constitutional claims under the Fourth and Fourteenth Amendments. Those claims include plaintiff's allegation that he was denied adequate medical care, subjected to excessive force, and denied protection from harm inflicted by other inmates, all in violation of his Forth and Fourteenth Amendment due process rights.

Plaintiff was 21 years old during the relevant time period.

---

[1] Plaintiff has also named various John Does as defendants. Multnomah County Trial Court Administrator Douglas Bray was also named as a defendant in this lawsuit however has been voluntarily dismissed by plaintiff. Defendant Pedro is no longer employed by defendant Multnomah County.

Page 2 - OPINION AND ORDER

Approximately one month prior to his incarceration plaintiff was stabbed by a stranger on the street. Plaintiff underwent open-heart surgery and was hospitalized. Upon his hospital discharge, plaintiff learned that a warrant for his arrest had been issued on misdemeanor charges of attempted possession of a controlled substance and failure to appear. Plaintiff turned himself in at the MCDC on May 17, 2004. Plaintiff's Declr. ¶¶ 2-4. Defendant Olson, a nurse at the MCDC, examined plaintiff in connection with the booking and intake process. Plaintiff displayed his surgical wound to Olson, informed her of his recent surgery and of the pain medication he was prescribed. Defendant Olson opted to assign plaintiff to the general inmate population rather than to the medical unit of the jail. Complaint, ¶ 14a.

Specifically, plaintiff alleges that defendants injured him in three ways: (1) defendant Olson wrongfully assigned him to the jail's general population, rather than to the jail's medical unit; (2) a sheriff's deputy assaulted him while he was awaiting a court appearance; and (3) another deputy sheriff knew that plaintiff was being regularly beaten and brutalized by an inmate with whom he had been housed and did nothing to protect him from those assaults. Plaintiff's Memo in Opposition to Summary Judgment, p.1-2.

Defendants raise the affirmative defense that plaintiff failed to exhaust his administrative remedies regarding his claim

against the defendants, and therefore move for dismissal pursuant to Fed. R. Civ. P. 56.

## STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Substantive law on an issue determines the materiality of a fact. T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of a dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply when evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the

moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Electrical, 809 F.2d at 630.

Regarding the affirmative defense raised by defendants, defendants have the burden of raising and proving that exhaustion of administrative remedies has not occurred. Syatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003), cert. denied, 540 U.S. 810 (2003).

## DISCUSSION

There is no dispute that defendant Multnomah County, through its Sheriff's Office, operates MCDC. The Sheriff's Office has set forth operational procedures and rules concerning inmate conduct. Those procedures are set forth in the Multnomah County Sheriff's Office Correctional Division Operational Procedures. Those procedures outline the inmate grievance procedure applicable to all inmates in the County's detention facilities.

The grievance procedure was implanted to "reduce the need for litigation, to provide inmates with an administrative means of expression, to provide resolution of problems and to improve Facility operations." Defs' Ex. 101. A grievance may be filed for: (1) an alleged violation of civil, constitutional, or statutory rights or policy; (2) an alleged criminal or prohibited act by a staff member; and (3) resolving a condition existing within the facility that creates unsafe or unsanitary living

conditions.  Id.  The grievance must be filed within five days of the event.  Id.  An inmate who is dissatisfied with the resolution of a grievance may appeal to the Facility Commander.  Defs' Ex. 102.  Inmates are apprised of the grievance procedure via the Inmates Manual at the time they are booked and lodged at MCDC.  The Inmate Manual describes the process whereby an inmate may file grievances.  Id.  Grievance forms are available throughout the MCDC.

Defendants allege that plaintiff failed to file a grievance at any point during his incarceration concerning the quality or quantity of medical services he received.  Plaintiff also failed to file a grievance concerning the level of protection provided to him, or regarding his housing or bunkmate.  Plaintiff does not dispute defendants' assertion in this regard.

The Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e(a) provides as follows:

> No action shall be brought with respect to prison
> conditions under section 1983 of this title, or any
> other Federal law, by a prisoner confined in
> any jail, prison, or other correctional facility
> until such administrative remedies as are
> available are exhausted.

The PLRA's exhaustion requirement is mandatory; all available remedies must be exhausted. Booth v. Churner, 532 U.S. 731, 740, n.5 (2002).  The Supreme Court has held that "proper exhaustion of administrative remedies is necessary" and the exhaustion requirement may not be satisfied "by filing any

untimely or otherwise procedurally defective . . . appeal." Woodford v. Ngo, ___ U.S. ___, 126 S.Ct. 2378 (2006). "The bottom line is that a prisoner must pursue the prison administrative process as the first and primary forum for redress of grievances." Vaden v. Summerhill, 449 F.3d 1047, 1051 (9th Cir. 2006).

Defendants assert that plaintiff failed to exhaust his administrative remedies as required by the PLRA, and therefore his claim must be dismissed. Plaintiff does not dispute that he failed to file any grievances concerning the acts alleged in his complaint against the defendants, however, plaintiff contends that the grievance procedure was not "available" to him during his incarceration. Plaintiff argues that he feared the consequences of filing any grievance against defendants, in that he would have suffered further or increased violence as a result.

Specifically, plaintiff alleges that as his pain increased due to his medication being confiscated and not re-prescribed, he requested help from the guards. Defendant Deputy Pedro allegedly entered plaintiff's holding cell, grabbed plaintiff by the shirt, twisted it, and pulled him out of the holding cell into an adjoining cell, where one or two inmates would be kept pending their court appearance, and slammed the door shut behind them. Once in the adjoining cell, defendant Pedro slammed plaintiff into a cell door, or concrete wall. Pedro then threw plaintiff

face-first onto the floor, presumably unaware of plaintiff's recent surgical wound. Deputy Pedro forcefully put his knee into plaintiff's back resting all of his weight on it, with his other boot placed on plaintiff's neck. Once Deputy Pedro had handcuffed plaintiff, he rolled him over and became agitated when he saw blood from plaintiff's surgical wound. Other deputies and medical staff came to assist. Medical staff put gauze onto plaintiff's wound and wrapped tape around his chest. Plaintiff was ultimately assigned to the disciplinary unit based on the allegedly false testimony by a Sheriff's Deputy to a judge.

In the disciplinary unit of the jail, plaintiff was housed with inmate Aaron Munoz. Plaintiff alleges that defendant Thompson, another corrections officer, knew that Munoz was a violent person, or came to know this, as he observed with indifference over the next several days as Munoz regularly beat plaintiff on the side of the head, stole his food, and attempted to steal his medications. Plaintiff alleges that defendant Thompson did nothing to stop the assaults and left plaintiff in the cell with Munoz over the next week, during which plaintiff suffered repeated, violent attacks. Munoz also allegedly stole plaintiff's food, which further weakened plaintiff. Eventually, on May 25, 2004, plaintiff was taken to the hospital, after Munoz hit him so hard on the head that he vomited.

///

Plaintiff alleges that he failed to file a grievance because he feared retaliation. Plaintiff states:

> I was concerned that if Munoz's beatings increased in severity, I would suffer severe injuries or even be killed. I assumed, because of the indifference to my safety that the jail deputies had demonstrated so clearly, that they would not protect me even if Munoz's assaults grew worse, or else would retaliate against me themselves in some way. This is why I did not file a written grievance against Deputy Thompson.

Pl's Declr. ¶ 19.

Plaintiff concedes that he failed to file any grievances against defendants. While plaintiff's admission that he did not exhaust all available administrative remedies prior to filing this lawsuit can be sufficient grounds to grant defendants' motion, the court must first examine plaintiff's claim that the grievance procedure was not "available" to him, thus justifying his failure to exhaust administrative remedies as required by the PLRA.

The court in Hemphill v. New York, 380 F.3d 680, 688 (2nd Cir. 2004), established a three-pronged test to determine whether a prisoner can counter defendants' contention that the prisoner has failed to exhaust administrative remedies as required by the PLRA. Id. at 686. The court must determine: (1) whether the administrative remedies were available to the inmate; (2) whether defendants forfeited the defense by failing to assert it, or are estopped from asserting the non-exhaustion defense based on their conduct; and (3) consider whether "special circumstances" has

Page 9 - OPINION AND ORDER

been plausibly alleged that justify "the prisoner's failure to comply with administrative procedural requirements." Id. (internal citations omitted). These factors are to be evaluated under an objective standard. That standard is whether a similarly situated individual of ordinary firmness would have been deterred from following regular procedures. Id. at 686.

I find that a question of fact exists as to whether the administrative remedies were available to the plaintiff given his circumstances. Plaintiff alleges that he reasonably feared physical injury, or worse, as a result of filing a grievance. Under these circumstances, I find that the grievance procedure was not, in fact, "available" to the inmate. Hemphill held that if an inmate's ability to comply with grievance procedures was impeded by threats from prison guards, the PLRA will not bar the inmate's action. Id. at 689-91. Plaintiff here alleges that he feared retaliation by defendant Thompson and other corrections officers if he filed a grievance regarding Thompson's tolerance of the beatings he was receiving from inmate Munoz. Plaintiff states that he believed that if Munoz's attacks against him grew worse, that he would be killed. Plaintiff alleges that Thompson was aware of the beatings plaintiff was regularly receiving from Munoz, and he ignored them. Plaintiff alleges that jail staff knew plaintiff had recently undergone major surgery and that the wound from that surgery had recently been breached during a

violent episode with a guard in the jail. Finally, plaintiff alleges that a sheriff's deputy falsely told a judge that plaintiff had assaulted a sheriff's deputy, resulting in plaintiff's assignment to the disciplinary unit.

Accepting plaintiff's declaration as true, and finding no evidence in rebuttal, I find that plaintiff's fear of retaliation from jail staff was reasonable. In other words, "a similarly situated individual of ordinary firmness" may well have decided that the grievance procedure, under the circumstances, was not available to him. Based on the record before this court, I cannot rule as a matter of law, that given plaintiff's stated fear of retaliation from the guards, it was unreasonable for plaintiff to conclude that filing a grievance against the guard(s) who "allowed" the beatings by inmate Munoz to continue against plaintiff was a viable option.

## CONCLUSION

Defendants' motion for partial summary judgment (doc. 13) is denied.

IT IS SO ORDERED.

Dated this 24 day of January 2007.

_____
Ann Aiken
United States District Judge